GERSETA CORPORATION, Plaintiff, *v.* THE EQUITABLE TRUST COMPANY OF NEW YORK, RAW SILK TRADING COMPANY, MORTIMER B. FOSTER and ISABEL PRICE FOSTER, Defendants.

Supreme Court, New York Special Term, January, 1924.

Subrogation — when equity will allow a setoff — when plaintiff equitably entitled to recoup from property of defendant pledged for payment of debt — when equity will not mitigate in favor of the original owner of the pledged stock the effect of his transfer of the stock to the pledgor.

Equity will allow a setoff provided the claim of the party asserting the right thereto has matured, and whether the claim against the party asserting such right has matured is immaterial.

Under a contract made between them in October, 1919, the plaintiff bought silk for future delivery which in turn the defendant, the Raw Silk Trading Company, bought in Japan and financed the importations by a letter of credit of the defendant trust company. In August, 1920, the trading company delivered to plaintiff under the contract certain silk so imported, held by the trust company as collateral and surrendered by it to plaintiff under trust receipts, the invoices being made expressly to the trust company, and in that month the trading company became insolvent. In the trading transactions under the contract neither the plaintiff nor the trading company, in substance, gave credit for the full amount owing it from the other, and on October 20, 1920, when the trust company brought an action against the plaintiff to recover the purchase price of the trust receipt silk, the latter had a valid legal setoff against the trading company for the balance due on account, and judgment was entered in the action in favor of the trust company. In the present action seeking, to the extent of the amount paid by plaintiff herein, to satisfy the judgment recovered against it by the trust company, to be subrogated to the rights of the trust company in certain corporate stock pledged with it by the trading company, all indebtedness of the trading company to the trust company having been paid in full, the plaintiff's claim was resisted by the trading company. Upon granting judgment in favor of plaintiff, *held*, that as the trading

company, which in equity and good conscience should have paid the trust company, had compelled the plaintiff, its own creditor, to increase by the amount of said judgment the debt to itself and reduce correspondingly its debt to the trust company, plaintiff was equitably entitled to recoup from the property of the trading company pledged for the payment of the same debt.

The original owner of the pledged stock had transferred it pursuant to an agreement under which he received its agreed value in capital stock of the trading company, and became its vice-president at an annual salary. The transferred securities were carried as assets in the trading company's financial statements issued with his knowledge. *Held*, that while in said agreement he restricted the use of said stock his consent to its use as collateral subjected it to all attendant risks of such use, including the risk of having it equitably allotted to one who reduced the lien against it, and as between him and the plaintiff which reduced such lien to its own loss there was in equity no reason to mitigate in favor of the original owner of the pledged stock the effect of his legal transfer of the title thereto.

Action to compel subrogation.

*Steckler & Weitzner* (*David Steckler*, of counsel), for plaintiff.

*Evarts, Choate, Sherman & Leon* (*Joseph H. Choate, Jr.*, of counsel), for defendant Raw Silk Trading Company.

*Olcott, Bonynge, McManus & Ernst* (*Irving L. Ernst*, of counsel), for defendants Foster.

Proskauer, J. Prior to July, 1920, Raw Silk Trading Company and Gerseta Corporation began to trade, each at various times buying silk from the other. By October 20, 1920, on these transactions Raw Silk Trading Company owed Gerseta Corporation at least $96,000, which was all due, and Gerseta Corporation owed Raw Silk Trading Company approximately $93,000, Raw Silk Trading Company being thus indebted by a balance of at least $3,000. In October, 1919, they had made a contract by which Gerseta Corporation bought silk for future delivery. Raw Silk Trading Company, in turn, bought this silk in Japan and financed the importation by a letter of credit of the Equitable Trust Company. In August, 1920, Raw Silk Trading Company delivered to Gerseta Corporation under the October, 1919, contract certain silk so imported, held by the trust company as collateral and surrendered to it by the trust company under trust receipts. The invoices to Gerseta Corporation therefor were made expressly payable to the trust company. In August, 1920, Raw Silk Trading Company became insolvent. On October 20, 1920, the trust company sued Gerseta Corporation for the purchase price of the trust receipt silk and recovered judgment, which in June, 1923, Gerseta Corporation settled by payment of $36,000. The trust company has no interest in this controversy. It has received payment of all indebtedness from Raw Silk Trading Company and still holds of

collateral pledged with it by this company certain stock of the Singer Manufacturing Company. Gerseta Corporation seeks here to be subrogated to the extent of the $36,000 payment to the rights of the trust company in this stock. This claim is resisted by Raw Si'k Trading Company.

Neither Gerseta Corporation nor Raw Silk Trading Company in substance gave credit for the full amount owing it from the other. The actual credit extended was the balance on the mutual account.

On October 20, 1920, when the Equitable Trust Company brought suit against Gerseta Corporation, the latter had a valid legal setoff as against Raw Silk Trading Company. Nor would this situation have been changed if plaintiff had given its trade acceptances, as called for by the 1919 contract, since in equity its right of setoff would still remain. Equity will allow a setoff on insolvency, provided the claim of the party asserting the right of setoff has matured. *De Camp* v. *Thomson*, 159 N. Y. 444, 448. It is immaterial whether the claim against the party asserting the right of setoff has matured. *Matter of Hatch*, 155 N. Y. 401. If no right of the trust company had intervened, plaintiff, being a creditor on balance, would have been required to pay nothing. Raw Silk Trading Company was obliged under the October, 1919, contract to deliver silk. By making this delivery with the trust company's silk it injected the rights of a third party which the plaintiff had to respect. Plaintiff should not thereby lose the $36,000, when that loss can be averted, wholly at the expense of Raw Silk Trading Company.

Defendant's counsel urge that subrogation is not granted to a party who has paid his own debt and that plaintiff cannot succeed here because the payment discharged its own obligation. The right of subrogation, however, rests on broader grounds.

" A legal subrogation arises when, by operation of law, a third person becomes equitably entitled to stand in the place of the creditor." *Connecticut Mutual Life Ins. Co.* v. *Cornwell*, 72 Hun, 199.

In *Dunlop* v. *James*, 174 N. Y. 411, 416, the court quotes with approval from the opinion in *Cottrell's Appeal*, 23 Penn. St. 294: " ' Whenever one not a mere volunteer discharges the debt of another, he is entitled to all the remedies which the creditor possessed against the debtor.' " And the court continues: " It (subrogation) applies to a great variety of cases, and is broad enough to include every instance in which one party pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter."

In *Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220 N. Y. 137, 144, it is said that subrogation "includes so wide a range of subjects that it has been called the 'mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it.'"

In equity and good conscience Raw Silk Trading Company should itself have paid the trust company. Instead it compelled plaintiff, its own creditor, to increase by $36,000 the debt to itself and to reduce correspondingly Raw Silk Trading Company's debt to the trust company. Gerseta Corporation may, therefore, recoup from the property of the Raw Silk Trading Company pledged for payment of the same debt.

Defendant Foster asserts title to this stock against both plaintiff and Raw Silk Trading Company. Originally its owner, he transferred it pursuant to an agreement by which he received in return its agreed value in capital stock of the Raw Silk Trading Company and became its vice-president at an annual salary of $12,000. It was further provided that the securities were to be sold by the Raw Silk Trading Company only with his consent, that any excess realized over their agreed valuation should be paid to him and that they were to be used only to obtain credit from banks. He had an option for three years to reacquire the securities by paying the agreed value. This agreement and the conduct of Foster do not sustain his claim that he continued to own the stock. He transferred it of record and received for it the agreed compensation. The company's financial statements issued with his knowledge carried the transferred securities as assets. While he restricted the use of the stock, he placed it at the risk of the business. By his consent to its use as collateral he subjected it to all risk attendant upon this use, including the risk of having it equitably allotted to one who reduced the lien against it. He passed the legal title to the stock to make profit for himself as a stockholder and officer of the Raw Silk Trading Company. As between him and this plaintiff which reduced the lien against the stock, to its own loss, there is no reason in equity to mitigate in his favor the effect of this legal transfer.

Judgment for plaintiff. Settle decision and judgment on notice.

**Judgment accordingly.**